CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
7/1/2022
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
     DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE No. 6:19-cr-00013 |
| v. | MEMORANDUM OPINION |
| QUENTIN LOWELL HORSLEY,<br>*Defendant.* | JUDGE NORMAN K. MOON |

    This matter is before the Court on Defendant Quentin Lowell Horsley's motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29. Dkt. 260. Upon consideration of the parties' memoranda, the trial record in this case and the relevant law, the Court concludes that Defendant's motion is without merit and must be denied. A separate order will issue.

## Background

    The Defendant proceeded to trial on charges of conspiracy to distribute and possess with intent to distribute methamphetamine, cocaine hydrochloride, heroin, and cocaine base (Count I), and three separate counts of distribution and possession with intent to distribute cocaine hydrocholoride (Counts V, VI, VIII). *See* Dkt. 48 (superseding indictment); Dkt. 244 (verdict form). The jury found the Defendant guilty on all counts. Dkt. 244. The Defendant subsequently filed a written motion for judgment of acquittal, to which the Government filed an opposition, Dkt. 275, and the Defendant filed a reply in support of his motion, Dkt. 278.

## Standard of Review

    The court, on a motion filed pursuant to Rule 29 of the Federal Rules of Criminal Procedure, "must enter a judgment of acquittal of any offense for which the evidence is

insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). When a Rule 29 motion is based on insufficiency of the evidence, denying the motion "is proper where, viewed in the light most favorable to the prosecution, substantial evidence supports a guilty verdict." *United States v. Zelaya*, 908 F.3d 920, 925 (4th Cir. 2018). "Substantial evidence" is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Gillion*, 704 F.3d 284, 294 (4th Cir. 2012) (citation omitted). Thus, "[i]n reviewing the sufficiency of the evidence following a conviction, the court is to construe the evidence in the light most favorable to the government, assuming its credibility, and drawing all favorable inferences from it, and will sustain the jury's verdict if *any* rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *United States v. Penniegraft*, 641 F.3d 566, 571–72 (4th Cir. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)). Therefore, on this standard, the Fourth Circuit has explained that "[a] defendant challenging the sufficiency of the evidence to support his conviction bears a heavy burden." *United States v. Legins*, 34 F.4th 304, 314 (4th Cir. 2022) (quoting *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997)) (cleaned up).

## Analysis

The Defendant's first argument is that the Government did not present "any credible evidence to support the allegations that Mr. Horsley was involved in any way in the distribution of methamphetamine or heroin." Dkt. 260 at 1. The Defendant argues that "[t]he only evidence that the government presented to support its Count I is evidence of a buyer/seller-relationship regarding sales of cocaine." *Id.* The Defendant also asserts: "[i]mportantly, the only evidence

against the defendant regarding any distribution of methamphetamines or heroin came from testimony of individuals that was discredited pursuant to the instructions of the Court." *Id.* at 2.

This argument is without merit. For one thing, the court "cannot make [its] own credibility determinations but *must assume that the jury resolved all contradictions in testimony in favor of the Government.*" *Penniegraft*, 641 F.3d at 572 (quoting *United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1402 (4th Cir. 1993)) (emphasis added). Moreover, as the Fourth Circuit has explained, "[w]e do not review the credibility of the witnesses when we evaluate whether there existed sufficient evidence to support a conviction." *United States v. Wilson*, 115 F.3d 1185, 1190 (4th Cir. 1997). Accordingly, while the Government presented more than the testimony of one witness or uncorroborated testimony in support of the conspiracy conviction as to methamphetamine and heroin, it bears mention that even the "uncorroborated testimony of one witness or of an accomplice may be sufficient to sustain a conviction." *Id.*; *see also Legins*, 34 F.4th at 314 ("Even an uncorroborated account of a single witness may constitute sufficient evidence"). The Court gave the jury instructions cautioning the jury to weigh the testimony of informants, drug or alcohol abusers or immunized witnesses with greater care than a witness not so situated. Dkt. 242 at 17–19. There is no dispute that the jurors were properly instructed. Thus, notwithstanding the Defendant's arguments that the only evidence of his conspiracy to distribute heroin or methamphetamine came from "discredited" witness testimony, Dkt. 260 at 2,[1] adherence to governing Fourth Circuit precedent forecloses the Defendant's

---

[1] *See also* Dkt. 278 at 2 ("Beyond the *self-serving testimony of Kenneth Adgerson*, however, there is no evidence that the defendant engaged in any transaction involving methamphetamines or heroin, or in any transaction involving more than an ounce of powder cocaine.") (Emphasis added).

attempt to have this Court review or revisit credibility of the witnesses in another way than that reached by the jury when it entered its verdict.

      Notably, the Defendant does not contest that the Government introduced evidence that he sold cocaine. *See* Dkt. 260 at 1. Moreover, notwithstanding the Defendant's argument that the evidence only showed that of a mere "buyer-seller relationship," *id.*, the Government introduced substantial evidence that would support the existence of a conspiracy to distribute narcotics. For instance, Mr. Adgerson testified that the Defendant both sold and "fronted" to Mr. Adgerson substantial amounts of cocaine, which Mr. Adgerson then would break down into smaller quantities for resale, and after Mr. Adgerson made the Defendant his money, he would pay the Defendant back. *See* Tr. Test. Day 2 (K. Adgerson); *see also* Dkt. 275 at 2. Mr. Adgerson testified that afterward he continued "the business relationship" with the Defendant and contacted the Defendant on an almost weekly basis to "re-up," *i.e.*, to get more drugs, which continued for several years. Mr. Adgerson testified that the amount increased until the Defendant was supplying Mr. Adgerson with a kilogram (or "brick") of cocaine at a time. The Defendant's argument that this was a mere buyer-seller relationship that cannot establish the existence of a conspiracy to distribute narcotics, is simply not borne out by the evidence in this case. And indeed, Fourth Circuit law establishes that even a single sale of substantial amounts of narcotics can support a reasonable inference of knowing participation in a conspiracy—much less sales of such quantities on an ongoing and regular basis. *See United States v. Seigler*, 990 F.3d 331, 338 (4th Cir. 2021) ("We have repeatedly recognized that evidence of a single buy-sell transaction involving a 'substantial quantity of drugs' can support a 'reasonable inference' of knowing participation in a distribution conspiracy."). Here, there was evidence to support many such transactions. Much of it from Mr. Adgerson. But in addition, Travis Smiley and Jaimz Bowman

4

also testified that they bought cocaine from the Defendant and the Defendant also "fronted" cocaine to Mr. Smiley after which he distributed it in smaller quantities and later paid the Defendant back. *See* Tr. Test. Day 3.

Moreover, there was also substantial tangible evidence that would support the Defendant's involvement in conspiring to distribute other narcotics, including heroin and methamphetamine. For example, as the Government asserts, "[l]aw enforcement … found a drug ledger, or 'owe sheet,' at Horsley's home listing 17 individuals who owed Horsley money and listing code words for different types of narcotics at the top." Dkt. 275 at 2–3; *see also* Dkt. 247-18 (owe sheet). Mr. Adgerson also testified about his text messages with the Defendant (also entered into evidence at Dkt. 247-78 (Gov't Ex. 102)), which further substantiated the existence of their conspiracy to distribute narcotics,[2] including heroin[3] and methamphetamine[4]. *See also* Dkt. 275 at 2–3.[5]

---

[2] *See, e.g.*, Dkt. 247-78 at 3:16 (Mr. Adgerson to the Defendant: "Yea don't wana get demoted I'm trying get promoted lol"); *id.* at 3:18-20 (the Defendant to Mr. Adgerson: "tryna move it faster though u knw … so we can get more work u feel me"); *id.* at 6:38 (the Defendant to Mr. Adgerson: "aiite just hit me up so we can keep it moving I gotta another one for u"); *id.* at 14:96-98 (Mr. Adgerson to the Defendant: "u caused a drought lol," which he testified meant there were "no drugs on the street," because "we couldn't re-up").

[3] *See, e.g.*, Dkt. 247-78 at 78:558 – 79:562 (the Defendant to Mr. Adgerson: "He got the heroin to[o] … 50,000 a brick," to which Mr. Adgerson responds, "W[e] have to plug in to places like Richmond for that," or Roanoke, and that they should "loc[k] down somebody else city"). When Mr. Adgerson testified, he explained everyone was telling them it would be "safer to go lock down somebody else's city."

[4] *See, e.g.*, Dkt. 247-78 at 80:569 – 81:572 (the Defendant to Mr. Adgerson: "Do tht ice move out there"—which Mr. Adgerson testified was slang for methamphetamine—and "We gotta set tht up").

[5] Mr. Smiley also testified that the Defendant had offered to "front" him meth and heroin, and, while Mr. Smiley decided not to distribute those for him, the Defendant showed Mr. Smiley the meth and heroin in the Defendant's car. *See* Tr. Test. Day 3.

Upon consideration of this and other substantial evidence presented by the Government and on the applicable standard of review, the Court concludes that the Government has presented more than sufficient evidence to support the Defendant's participation in the drug trafficking conspiracy charged, notwithstanding the Defendant's arguments to the contrary. The Defendant's first argument in its motion for acquittal fails.

The Defendant's second argument is based upon the jury's completion of the portion of the verdict form pertaining to Count One. *See* Dkt. 260 at 2–3; Dkt. 278 at 2–3. When the jury returned its verdict, it found the Defendant "guilty" of Count One on the first page of the verdict form.[6] On the second page, the jury checked lines identifying controlled substances that formed the basis of the conspiracy in Count One: checking "methamphetamine" (and further identifying an amount of 500 or more grams), checking "cocaine hydrochloride" (and further identifying 500 or more grams), checking "heroin" (but then leaving unchecked one of the two listed ranges for amounts, *i.e.*, less than 100 grams or 100 grams or more); and leaving unchecked the last listed controlled substance, cocaine base. *See* Dkt. 244 at 1–2 (verdict form); Dkt. 268 at 2–4; *id.* at 10 (explaining jury form as initially returned) (Trial Tr. Day 4).

The Court read the verdict form at that point and said to the jury: "in Question 2 under 'heroin,' there is no check of the weight." Dkt. 268 at 2. The Court asked whether that was an "oversight," and the foreperson explained that it was. *Id.* The Clerk then read the entirety of the verdict form. *Id.* at 2–4. The Court then instructed, "Let's let the jury go back and complete the form." *Id.* at 4. When the jury returned, the Court read the verdict and asked the Clerk "to

---

[6] Count One concerned conspiracy to distribute and possession with intent to distribute one or more controlled substances, namely methamphetamine, cocaine hydrocholride, heroin, or cocaine base. *See* Dkt. 244 at 1 (verdict form). The jury also found the Defendant guilty of Counts Fix, Six and Eight, which were three counts of distribution and possession with intent to distribute cocaine hydrochloride. *Id.* at 3.

publish just what was previously omitted." *Id.* at 7. As the Clerk read, the jury's verdict as to the heroin amount checked 100 grams or more of a mixture or substance containing a detectable amount of heroin, and the jury had also checked cocaine base. *Id.* All jurors responded that they agreed upon this verdict. *Id.*

The Defendant's position is that, as to heroin and crack cocaine, the verdict form at the first point in time constituted the jury's actual verdict. The Defendant argues that the jury thus failed "indicate a quantity for the amount of heroin" that the Defendant distributed, and further failed "to demonstrate its unanimous decision that [the Defendant] had distributed crack cocaine." Dkt. 260 at 3. In other words, the Defendant argues, "the jury's verdict as to heroin and crack cocaine should both be final." Dkt. 260 at 3.

The Defendant contends that the jury did not commit any mere clerical error or oversight in returning the verdict form with those omissions, notwithstanding statements they made stating that was all it was. *See* Dkt. 278 at 2–4. The Defendant argues that the jury was only then polled as to that issue only after the jury was asked to make a subsequent finding on whether the defendant's prior conviction for cocaine distribution constituted a serious drug felony. *Id.* at 3. Accordingly, the Defendant argues that the jury's "statements about whether its prior decisions were clerical errors (prior to its receipt of this knowledge) cannot receive the same benefit of the doubt as it might in a scenario where new prejudicial information about the defendant had not just been introduced to it." *Id.*

The Court concludes that the Defendant's argument lacks merit. Indeed, the jury was asked about this issue several times. All jurors expressed the uniform understanding and without hesitation that the unchecked lines next to the amount of heroin and next to cocaine base when

7

they originally returned were just a clerical mistake or oversight, and not their considered judgment.

When the jury first returned the verdict form and the Court read it, the Court immediately said to the jury: "in Question 2 under 'heroin,' there is no check of the weight." Dkt. 268 at 2. The juror responded, "Sorry." *Id.* The Court further inquired, "I mean, is that an oversight?" *Id.* The juror responded: "Oversight." *Id.* After the Clerk read the verdict form, the Court further instructed the jury: "Let's let the jury go back and *complete the form*." *Id.* at 4 (emphasis added). When the jury returned, they had checked in their verdict form 100 grams or more of a mixture of substance containing a detectable amount of heroin and they also checked cocaine base—all jurors confirmed that was their verdict. *Id.* at 7. At this point (and even before any evidence about the Defendant's prior conviction was brought to the jury), the jury had confirmed unequivocally that the unchecked weight was merely an "oversight," and they had "completed the form," as the Court had instructed. *Cf. Richardson v. Marsh*, 481 U.S. 200, 211 (1987) ("[J]uries are presumed to follow their instructions.").

The Court then sent the jury back (again) to consider the separate issue of whether the Defendant was convicted of a serious drug felony for which he served more than 12 months imprisonment and for which he was released within 15 years of the commencement of the offense charged in Count One. *See* Dkt. 268 at 7–8; Dkt. 244-1 (verdict form, phase II). The Court submitted the verdict form phase II and timing of the submission of this issue to the jury agreed upon by the parties and had the Assistant United States Attorney read to the jury at this point the parties' stipulation of evidence on the issue. *See* Dkt. 268 at 7–8. While the jury was out, and upon further argument by counsel for Defendant that the jury had actually found a not

8

guilty verdict as to the cocaine base, *id.* at 9, the Court determined to further inquire about the issue when they returned.

> At that point, the Court had the following exchange with the jury.
>
> THE COURT: When you first came out with the general verdict form, heroin had been checked, but the amount had not been checked. And I want to clarify again: You said that was a clerical – or an oversight. Do all of you agree that that was an oversight?
>
> ALL JURORS: Yes.
>
> THE COURT: And then when you came back, cocaine base had not been checked, and it is checked now; is that correct?
>
> ALL JURORS: Yes.
>
> THE COURT: All right. Was there a unanimous finding by the jury that cocaine base should have been checked?
>
> ALL JURORS: Yes.
>
> THE COURT: All of you agree?
>
> ALL JURORS: Yes.

Dkt. 268 at 10–11.

The Court concludes that the jury verdict was reflected in its *completed* verdict form, which included the jury's finding the Defendant guilty in Count One of conspiracy to distribute more than 100 grams of heroin and also to distribute crack cocaine (as well as to distribute 500 or more grams of methamphetamine and 500 or more grams of cocaine hydrochloride—which are not at issue here). *See* Dkt. 244 at 2. All jurors were consistent and clear, following several rounds of inquiry from the Court, that unchecked boxes on their initially returned verdict form as to 100 grams or more of heroin and cocaine base were just an inadvertent oversight when they first returned the verdict form. The Defendant has presented no actual responses from any of the jurors or other significant facts that would in any way detract from the jury's uniform response

9


on that point. *See* Dkt. 260 at 2–3; Dkt. 278 at 2–4. There's nothing to suggest the jury had purposefully intended to leave either blank. Nor is the Court aware of any authority (and the Defendant has offered none) holding that the jury would have been bound by a clerical error in its verdict form, when that clerical error was pointed out to them before they were discharged. *See* Dkt. 260 at 2–3; Dkt. 278 at 2–4. Indeed, Fourth Circuit precedent has allowed a district court to direct a jury "to continue its deliberations" when "it became clear that the jury had failed to answer certain questions on the verdict form." *United States v. Johnson*, 820 F. App'x 199, 205 (4th Cir. 2020) (unpublished) (finding no abuse of discretion in district court's denial of defendant's motions for mistrial on alleged inconsistency in jury verdict). And here, the jury explained there was no further substantive deliberation but just inadvertent omissions from the jury verdict form, which should have been checked initially.[7]

For these reasons, as the Defendant has raised no meritorious issue in its motion for judgment of acquittal (Dkt. 260), the motion will be denied in an accompanying Order, to follow. The parties should forthwith contact the Clerk of Court to set a date for sentencing.

The Clerk of Court is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

---

[7] The Court also finds unpersuasive the Defendant's contention that the length of time the jury was out reflected that they continued substantive deliberations. *See* Dkt. 260 at 3. The Court considers it much more plausible from its vantage that much of the ten-minute-plus delay was more susceptible of another explanation—that the jury was waiting to hear from the Marshal that they could return to the courtroom, at the same time the Court and Marshal were waiting to hear from the jury that they were finished. *See* Dkt. 268 at 6. That is much more plausible than the Defendant's contention that the jury actually continued to have substantive deliberations but told the Court it had only fixed clerical errors.

Entered this __1st__ day of July, 2022.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE