**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | **Case No. 6:19-CR-13** |
| **V.** | : | |
| | : | |
| **QUENTIN LOWELL HORSLEY** | : | |

# UNITED STATES' MOTION TO DISMISS IN RESPONSE TO PETITIONER'S MOTION FOR RELIEF PURSUANT TO TITLE 28, UNITED STATES CODE, SECTION 2255

## INTRODUCTION

Quentin Lowell Horsley ("Horsley") filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 on September 22, 2025. ECF No. 373. Horsley was convicted following a jury trial for his involvement in a drug trafficking conspiracy that brought cocaine, methamphetamine, and heroin into Lynchburg, Virginia. As the Fourth Circuit described in his direct appeal, there was "the direct overwhelming physical evidence seized from the stash houses and the testimony of [Horsley's] associates in the drug trafficking conspiracy" presented at trial that led to his conviction. Memorandum Opinion, ECF No. 344 at 47.

Horsley now seeks to vacate the judgment against him and advances eight grounds for doing so: 1) Horsley asserts that his attorneys were ineffective for failing to file a motion for a *Franks* hearing, although Horsley does not identify the issue he sought to challenge, ECF No. 373 at 4; 2) Horsley asserts his attorney admitted guilt at trial without his consent or knowledge, *Id*. at 5; 3) Horsley asserts his attorney was ineffective for signing a stipulation as to chemist testimony, *Id*. at 6; 4) Horsley asserts his attorney was ineffective for failing to object to evidence offered by the Government of controlled purchases that related to dismissed counts of the indictment, *Id*. at

8; 5) Horsley claims his appellate lawyer failed to file a claim related to the search of his apartment; *Id*. at 13; 6) Horsley claims his attorney was ineffective for failing to object to multiple forms of evidence, *Id*.; 7) Horsley claims his attorney failed to object to Rule 404(b) evidence and failed to Roberta Haskins as a witness, *Id*.; and 8) Horsley claims the Government violated his Sixth Amendment right by suppressing a photo lineup, *Id*.

In general, Horsley's complaints amount to hindsight disagreements with his counsels' actions. Horsley cannot and, and does not, point to any specific issue which caused him prejudice. Accordingly, this Court should dismiss Horsley's Motion to Vacate.

## FACTS AND PROCEDURAL HISTORY

*Procedural History*

Horsley was arrested February 11, 2019 at the MGM Casino in National Harbor, Maryland on cocaine distribution charges in the Circuit Court for the City of Lynchburg. On May 13, 2019, a federal grand jury returned an indictment against Horsley, charging him with one count of conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine and 500 grams or more of cocaine, four counts of distributing cocaine. Indictment, ECF No. 1. On September 11, 2019, a grand jury returned a superseding indictment that amended the conspiracy charge to include 100 grams or more of heroin and cocaine base. Superseding Indictment, ECF No. 48. Prior to trial, the Government moved to dismiss Count 7 of the Indictment. ECF No. 226. This was granted by the Court. ECF No. 234.

After multiple continuances and change of counsel (as detailed below), and due in part to the COVID-19 pandemic, Horsley's trial took place in Lynchburg, Virginia on March 22, 2022 through March 25, 2022. The jury found Horsley guilty on all counts. Verdict, ECF No. 244.

*Timeline of Horsley's Counsel*

Upon his first appearance in federal court in May 2019, Horsley was initially represented by Charles Weber. Notice of Appearance, ECF No. 10. On June 5, 2019, Mr. Weber moved to withdraw as counsel. ECF No. 34. The Court then appointed Grady Donaldson to represent Horsley. ECF No. 36. On June 13, 2019, Vaughan Jones noticed his appearance for Horsley. ECF No. 38. On November 7, 2019, Horsley motioned the Court to appoint counsel. ECF No. 69. On November 13, 2019, Vaughan Jones moved to withdraw. ECF No. 71. On November 14, 2019, Robert Dean entered an appearance for Horsley. ECF No. 72.

After litigation, as outlined below, Robert Dean moved to withdraw as counsel. ECF No. 143. Paul Scott DeBruin was appointed to represent Horsley. ECF No. 150. On October 8, 2021, Anthony Anderson entered an appearance and was Horsley's counsel through trial. ECF No. 191.

*Motions Filed by Horsley*

Horsley, through Robert Dean, filed four motions: 1) to suppress evidence seized from a Jaguar, ECF No. 78, 2) to suppress evidence from 1009 Misty Mountain Rd Apt. 1212, ECF No. 79, 3) to exclude the testimony of Roberta Haskins, ECF No. 80, and 4) to suppress the seizure of cellular phones at the MGM Hotel Room rented by Horsley, ECF No. 84. The Government opposed these motions. Response, ECF No. 88. The Court conducted an evidentiary hearing on these Motions. ECF No. 106. The Government filed a supplemental response. ECF No. 111. Horsley filed additional authority. ECF No. 114. The Government responded to this filing. ECF No. 115. Ultimately, the Court denied these Motions. Order, ECF 134. Horsley moved to reconsider. ECF 137. The Government responded to the motion to reconsider. ECF 139. The Court denied the Motion to reconsider. ECF No. 158.

Horsley, through Paul DeBruin, filed a motion to suppress. ECF No. 188 & 189. The Government opposed. ECF No. 202. Horsley, through Tony Anderson, filed a supplemental brief. ECF No. 218. The Government responded to this supplement. ECF No. 225. The Court denied the motion to suppress. ECF 230.

Horsley through Tony Anderson filed a motion to suppress statements. ECF No. 207. The Court denied the motion. ECF No. 233.

*Horsley's Proffer Interview*

On July 31, 2019, while represented by attorney Vaughan Jones, Horsley met with the Government for a proffer interview. Drug Enforcement Administration Task Force Officer Daniel Bailey was present during the interview and submits a Declaration, attached to this filing as Exhibit A, describing the contents of the interview. In summary, Horsley admitted, in specific detail, that he distributed cocaine in the Lynchburg area and imported cocaine from various suppliers of cocaine. *See* Exhibit A. Horsley also admitted to directing the actions of co-defendant Kenneth Adgerson.

The proffer agreement, which Horsley signed, is attached as Exhibit B. Importantly, the proffer agreement read:

> I understand that if I (a) give a false statement (during the interview and/or thereafter), (b) commit perjury, or (c) **present evidence including, but not limited to, evidence presented through other witnesses at any criminal or civil proceeding) that is inconsistent with a statement I make during this interview session**, the United States may use any statements I make and any information I provide for any purpose. In this agreement "any purpose" means any purpose, including, but not limited to, use as substantive evidence in any criminal proceeding (including, but not limited to, in the Government's case-in-chief at trial), criminal investigation, civil proceeding and/or civil investigation.

Exhibit B at 1 (emphasis added).

## STANDARD OF REVIEW

*Vague and Conclusory Allegations Are Not Cognizable in § 2255*

A Motion to Dismiss a § 2255 petition may be granted where a defendant raises only vague and conclusory allegations of error. It is well-settled that "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013) (quoting *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000), and citing *Jones v. Gomez*, 66 F.3d 199, 2014 (9th Cir. 1995), *Andiarena v. United States*, 967 F.2d 715, 719 (1st Cir. 1992)).

*Previously Litigated Claims Are Not Cognizable in § 2255*

Issues previously decided on direct appeal may not be raised on collateral review. *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976). "[I]t is well settled that [a petitioner] cannot 'circumvent a proper ruling . . . on direct appeal by re-raising the same challenge in a § 2255 motion.'" *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013) (quoting *United States v. Linder*, 552 F.3d 391, 396 (4th Cir. 2009)).

*Procedurally Defaulted Claims*

"In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." *United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1999); *see also United States v. Frady*, 456 U.S. 152, 168 (1982); *United States v. Maybeck*, 23 F.3d 888, 891 (4th Cir. 1994).

The cause prong of the test for procedurally defaulted issues "must turn on something external, such as the novelty of the claim or the denial of the effective assistance of counsel."

*Frady*, 456 U.S. at 168. For purposes of the procedural-default standard, "cause . . . ordinarily requires a showing of some external impediment preventing [petitioner] from constructing or raising the claim." *Murray v. Carrier*, 477 U.S. 478, 492 (1986). If a defendant does show cause for a procedural default, he must still show actual prejudice resulted. To accomplish that, the defendant must show more than "just the 'possibility of prejudice.'" *United States v. Frady*, 456 U.S. 152, 170 (1982). The error must have resulted in an "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.*

Even if a defendant cannot show cause for a procedural default, a defendant may still win relief if his case falls "within 'the narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). Because it is necessary to balance society's interest in the finality of convictions and the preservation of scarce judicial resources, to establish a "fundamental miscarriage of justice" justifying review of barred claims, a petitioner must establish through new evidence "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. at 327. The petitioner must establish actual innocence by clear and convincing evidence. *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999).

*Ineffective Assistance of Counsel*

After conviction and exhaustion of appeals, the Court is "entitled to presume that [a defendant] stands fairly and finally convicted." *United States v. Frady*, 456 U.S. 152, 164 (1982). To overcome this presumption and obtain relief on a motion under 28 U.S.C. § 2255, a defendant must establish an error of "constitutional or jurisdictional magnitude" or an error which "could not have been raised on direct appeal, and if condoned, would result in a complete miscarriage of

justice." *United States v. Shaid*, 937 F.2d 228, 233 & n.7 (5th Cir. 1991) (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)).

To establish constitutionally ineffective assistance, a defendant must satisfy both prongs of a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, he must show, considering all the circumstances, that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-91. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. In making this determination, there is a strong presumption that counsel's performance fell within the wide range of reasonableness. *Strickland*, *Id.* at 689.

Second, a defendant must affirmatively prove prejudice, by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Id.* In conducting the analysis, "a court should presume, absent challenge to the judgment of grounds of evidentiary insufficiency, that the judge or jury acted according to the law." *Id.* The court must consider "the totality of the evidence before the judge or jury," but "evidence about the actual process of decision, if not part of the record of the proceeding under review, and evidence about, for example, a particular judge's sentencing practices, should not be considered in the prejudice determination." *Id.* at 694-95 (cleaned up).

The Court is not required to analyze the two prongs of the *Strickland* test in order. If a defendant fails to meet the burden of proving prejudice, the reviewing court need not even consider the performance prong. *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992). "Surmounting Strickland's high bar is never an easy task.... [T]he standard for judging counsel's representation is a most deferential one." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Attorney

error can serve as cause for default, but only if it amounts to a violation of the defendant's constitutional right to effective assistance. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). However, "[t]rial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as 'what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence.'" *Robert Leroy McCoy v. Louisiana*, 584 U.S. 414, 422 (2018) (quoting *Gonzalez v. United States*, 553 U.S. 242, 248 (2008).

*<u>Counsel Has Wide Latitude in Selecting Issues in a Motion to Suppress</u>*

When applying the *Strickland* standard to a claim of failure to file a suppression motion, under the deficient performance prong, "'it is enough to call into question counsel's performance that an unfiled motion would have had some substance.'" *United States v. McNeil*, 126 F.4th 925, 942 (4th Cir. 2025) (quoting *Grueninger v. Dir., Virginia Dep't of Corr.*, 813 F.3d 517, 524-25(4th Cir. 2016)). The court then considers "whether 'reasonable strategic reasons' nonetheless 'warranted not filing the motion.'" *McNeil*, 126 F.4th at 942.

"[C]ounsel has 'wide latitude' in deciding whether there are 'reasonable strategic reasons' to forgo filing" a suppression motion. *McNeil*, 126 F.4th at 945. "Critical facts" to consider are whether the defendant "'relayed to counsel the key facts on which he now relies' in his § 2255 petition, [and] whether counsel's decision not to file a suppression motion was based on trial strategy." *McNeil*, 126 F.4th at 945 (quoting *Pressley*, 990 F.3d at 389). But, evaluating whether counsel had "reasonable strategic reasons" for not filing a suppression motion almost certainly requires an evidentiary hearing to develop the facts, as without those facts, the Court "'cannot determine whether, viewed objectively, counsel acted reasonably under the circumstances.'" *McNeil*, 126 F.4th at 945 (quoting *Pressley*, 990 F.3d at 389).

"To satisfy the prejudice prong, a petitioner must show that the unfiled suppression motion was 'meritorious and likely would have been granted,' and also a 'reasonable probability that granting the motion would have affected the outcome' of the plea process." *Id.* (quoting *Grueninger*, 813 F.3d at 525; *United States v. Pressley*, 990 F.3d 383, 388) (4th Cir. 2021)).

*Counsel Is Required to Consult the Defendant When Admitting Guilt and May not Override the Defendant's Objection*

The Sixth Amendment "contemplat[es] a norm in which the accused, and not a lawyer, is master of his own defense." *Gannett Co. v. DePasquale*, 443 U.S. 368, 382 n.10 (1979). To that end, the Supreme Court has reserved for a criminal defendant the right to make "certain fundamental decisions" about his defense no matter how strongly his lawyer may disagree. *United States v. Roof*, 10 F.4th 314, 351 (4th Cir. 2021). Those include, "whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal." *Robert Leroy McCoy v. Louisiana*, 584 U.S. 414, 422 (2018).

The Fourth Circuit explained a lawyer's obligations with respect to conceding guilt in *United States v. Hashimi*:

> To protect a client's right to decide for himself whether to concede guilt to a jury, *McCoy* explained, defense counsel is obliged to do two things. First, *McCoy* contemplates a consultation between defense counsel and client, in which defense counsel may try to persuade a client that conceding guilt is or has become the best course. And second, if the client expresses a preference in response to that consultation, counsel may not "override" it and must instead abide by it.

110 F.4th 621, 628 (4th Cir. 2024) (citation omitted).

When an attorney follows this procedure and receives no response - neither approval or objection, "then the choice defaults to the attorney, who 'may permissibly guide the defense pursuant to the strategy she believes to be in the defendant's best interest.'" *Hashimi*, 110 F.4th at

628 (quoting *McCoy*, 584 U.S. at 424 and discussing *Florida v. Nixon*, 543 U.S. 175, 181 (2004). The Fourth Circuit summarized:

> In short, *McCoy* and *Nixon* leave us with a reasonably straightforward rule. If defense counsel assesses conceding guilt to a jury as the wisest path, he has two obligations: He must consult with his client, and, if the client engages, he may not "steer the ship the other way." If the lawyer violates these rules and thus "usurp[s] control of an issue within [the defendant's] sole prerogative," the remedy is a new trial, regardless of whether prejudice can be demonstrated.

*Hashimi*, 110 F.4th at 629 (citation omitted).

However, any claim that a defendant did not consent to a concession of guilt must be accompanied by evidence, such as a sworn affidavit that at no time before or during the trial did the defendant consent. *Id*.

*Counsel Is Best Suited to Select Issues to Raise in Appeal*

Although the decision whether to appeal rests solely with a criminal defendant, subsequent decisions about which issues to raise on appeal rest with counsel, who is better suited to estimate the probability of success on any given argument. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). "The process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986). "[I]t is still possible to bring a Strickland claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). The Supreme Court has explained "that appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). The presumption of effective assistance will "generally" be overcome "only when

ignored issues are clearly stronger than those presented." *Id. (*citing and quoting in parenthetical *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

## ARGUMENT

Horsley asserts eight separate claims for relief. As outlined below, each of these should be dismissed.

### I. Horsley Fails to Show that Counsel Was Ineffective for Failing to Request a *Franks* Hearing

Horsley's first claim is that his attorney, Robert Dean, failed to file a motion for a *Franks* hearing for search warrants related to GPS warrants and the search of his apartment. Motion, ECF No. 373 at 4.

To prove ineffective assistance of counsel, Horsley must show, considering all the circumstances, that counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-91 (1984). Horsley must also show, prove prejudice, by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

"A *Franks* hearing provides a criminal defendant with a narrow way to attack the validity of a search-warrant affidavit. Along with affirmative false statements, *Franks* protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate." *United States v. Haas*, 986 F.3d 467, 474 (4th Cir. 2021) (internal citation omitted). To ultimately succeed on a motion to suppress based on allegedly false or missing information in a warrant affidavit, a defendant must show: (1) the false statement or omission was intentionally included in order to mislead the magistrate or made with a reckless disregard of whether it would mislead the magistrate; and (2) the offending information is necessary to the probable cause determination. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

Here, Horsley's allegations are "vague and conclusory" and should be dismissed. *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013). Horsley does not assert, or even suggest, what the potential issue raised in a motion for a *Franks* hearing might be or how it would affect the warrant. Horsley does not make even a bare assertion of what false information or omission might be in the search warrants. Accordingly, his grounds for relief fails to state a cognizable claim. Horsley cannot show prejudice because there is no proof, or even assertion, that had some motion been filed, anything would have resulted differently. Horsley's assertion is a complete hypothetical unsupported by any facts.

Further, what we do know is that Robert Dean filed four motions, including a challenge to the search warrant for Horsley's apartment. Motion, ECF No. 79. No *Franks* issue was raised in this filing. "[C]ounsel has wide latitude in deciding whether there are reasonable strategic reasons to forgo filing a suppression motion." *United States v. McNeil*, 126 F.4th 925, 945 (4th Cir. 2025) (citation omitted). It stands that counsel also has latitude in deciding which issues to pursue in a motion. No *Franks* issues were identified, nor are they identified now by Horsley. Accordingly, the Court should dismiss this claim of ineffective assistance of counsel.

## II. Horsley Fails to Show That His Attorney Admitted His Guilt Without His Consent or Knowledge

Horsley's second contention is that at trial, his attorney, Tony Anderson, conceded his guilt at trial without his consent. Motion, ECF No 373. Horsley does not describe exactly what he complains was admitted without his consent. However, as detailed below, the Government believes Horsley is referring to statements made during opening and closing statements by counsel with respect to cocaine trafficking.

*A. Horsley's Counsel Did Not Fully Admit Guilt At Trial*

Although not specified by Horsley, the Government identified three potential statements by counsel that could constitute admissions or concessions. The first is from opening statements where counsel stated:

> "Now, you will hear evidence in this case that would suggest to you that Mr. Horsley is involved and had been involved with the sale of some cocaine. In fact, you will hear some evidence of some actual distributions that were made. But pay particular attention as to those, what's alleged as to their quantities; pay particular attention as to how many times they occurred; and most importantly, most importantly, pay attention to when this case shifted."

*United States v. Quentin Lowell Horsley*, United States Court of Appeals for the Fourth Circuit, Case No. 22-4671, Joint Appendix I of II, Doc: 26-1 at 314.

The second was also from opening statements where counsel stated:

> "Make no mistake, I'm not trying to suggest to you, and our evidence and our case will not be to you that Mr. Horsley didn't have some involvement with the sale of cocaine. You're going to hear about that. But at the end of the case, you're going to be called upon to judge, you're going to be called upon to decide what role he played in his sales of cocaine. You'll be called upon to decide what quantities he sold of cocaine. And we submit there will be some evidence for you to reach those conclusions.

*Id*. at 316-317.

The final was in closing argument where counsel stated:

> "You'll remember in the opening when we met early on we talked about you would hear evidence that Mr. Horsley was involved with cocaine. And you might conclude, after hearing all the evidence, that there were certain distributions made of cocaine. But what we vehemently then and now suggested, and now submit to you for your consideration, is that Mr. Horsley was never involved with a conspiracy to distribute methamphetamine or heroin.

*United States v. Quentin Lowell Horsley,* United States Court of Appeals for the Fourth Circuit, Case No. 22-4671, Joint Appendix II of II, Doc: 26-2 at 393.

These statements by counsel clearly show a strategic attempt in the case to distance Horsley from the methamphetamine and heroin aspects of the case. This was a reasonable choice as the cocaine involved in the case had lower mandatory minimums and lower applicable Guidelines. While the statements themselves circle the issue and make reference to Horsley's involvement in cocaine trafficking, they do not outright admit his guilt. That is, Mr. Anderson did not ask the Court to find Horsley guilty. Accordingly, the Court should find there was no error and dismiss the claim.

*B. Horsley's Attorney Represents That His Practice Was to Consult His Clients and Horsley Submits No Evidence to the Contrary*

Even if this Court were to find that the above statements by counsel were concessions, there is no evidence that counsel did not consult Horsley about this decision. Attached as Exhibit C to this filing is an affidavit from Tony Anderson, Esquire. In his affidavit, Mr. Anderson describes that "it has been my standard practice to notify and involve my clients in decision about how to acknowledge and address available evidence in preparing for a given case." Exhibit C at 1. Mr. Anderson goes on to describe that "Although I have no reason to believe that I deviated from this standard practice in Mr. Horsley's case, I do not have a present independent recollection of whether I did or did not have such a conversation with Mr. Horsley." *Id.*

This is contrasted with no affidavit or evidence submitted by Horsley. While Horsley makes the claim in his petition, the Fourth Circuit recognized in *Hashimi* that these types of claims should be accompanied by sworn affidavits. In the absence of any real evidence to support this claim, the Court should dismiss it.

*C. Horsley Admitted His Guilt to Cocaine Trafficking During a Proffer Interview*

In addition to Mr. Anderson's statements, it is also incredibly likely that such a conversation took place because, prior to Mr. Anderson's involvement Horsley confessed to

cocaine trafficking to the Government through a proffer interview. As detailed in Government Exhibit A, on July 31, 2019, Horsley met with the United States for a proffer interview. Horsley identified three sources of supply for cocaine, including Jermel Storey. *See* Exhibit A at 1-3. Horsley described selling to and directing co-defendant Adgerson. *See* Exhibit A at 4. Horsley also described five specific cocaine customers, including Travis Smiley and Aaron Slaughter. *See* Exhibit A at 4-6. Horsley also provided details on cooking cocaine into crack, packaging, and prices of narcotics. *See* Exhibit A. In summary, Horsley admitted to the Government to selling a substantial quantity of cocaine

Further, pursuant to the proffer agreement, attached as Exhibit B, had Horsley presented anything counter to what he told the Government during the proffer, all of his statements would have been admissible at trial. That is, if Horsley claimed that he did not sell cocaine or contradicted anything said in his proffer, the United States would have called Task Force Officer Daniel Bailey to recite all of Horsley's statements about how he did make these admissions.

Horsley's proffer and the contours of the agreement are important for two reasons. First, the defendants in *McCoy* and *Hashimi* were adamant that they were innocent and did not want to admit guilt. This was used in support of their claim that their attorneys acted against their wishes. The courts in assessing their claims remarked that they had staked out such a position, unlike the defendant in *Nixon*, who remained silent. Here, Horsley is not similarly situated to the defendants in *McCoy* and *Hashimi* as he openly admitted his guilt of cocaine trafficking during the proffer interview. It is also much more likely that, because he admitted such guilt, he would have consented to the same at trial, which Mr. Anderson believes he would have discussed with Horsley.

Second, Horsley was effectively stuck with the statements he made during the proffer and could not controvert them, or risk admitting the entire proffer interview. Mr. Anderson was keenly

aware of the proffer interview provided in discovery. It stands to reason that Mr. Anderson discussed this very issue with Horsley because of the risk it presented. Horsley's prior confession to cocaine trafficking during the proffer interview supports that he was advised and made conscious choice at trial. His Motion should be dismissed.

## III. Horsley Fails to Show that Counsel Was Ineffective for Stipulating to Chemist Testimony

Horsley claims that his lawyer for signing a stipulation agreement that related to chemist testimony. Motion, ECF No. 373 at 6.

To prove ineffective assistance of counsel, Horsley must show, considering all the circumstances, that counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-91 (1984). Horsley must also show, prove prejudice, by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Trial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as 'what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence.'" *Robert Leroy McCoy v. Louisiana*, 584 U.S. 414, 422 (2018) (quoting *Gonzalez v. United States*, 553 U.S. 242, 248 (2008).

Here, it is well-recognized that stipulating to issues at trial that are not in contention allows for more effect argument on issues that are in contention. Throughout the trial, Horsley's argument was that he was not responsible or aware of the narcotics found in Roberta Haskins's home. Horsley repeats that claim in his Motion. Motion, ECF No 373 at 6. Accordingly, the testimony of a qualified chemist who would testify that the substances were in-fact methamphetamine, heroin, and cocaine, was uncontroverted. This chemical testing did not bear on whether Horsley possessed

the substances. Horsley's counsel's decision to stipulate to this evidence was both within the lawyer's province and a reasonable action in furtherance of the case.

Further, Horsley cannot otherwise show prejudice from this action. He does not assert how cross-examination of the chemist would assist him in being found not guilty. He has not and cannot show any prejudice from the stipulation of the chemist results. For these reasons, the Court should dismiss this claim.

## IV. Horsley Fails to Show Counsel Was Ineffective For Failing to Object to Conduct Related to Dismissed Count

Horsley claims that his lawyer ineffective when he "allowed evidence into trial" pertaining to Count Seven, which the Government dismissed before trial. Motion, ECF 373 at 8. Horsley complains that his lawyer did not object. *Id.*

### *A. Horsley Does Not Describe What Evidence Was Improperly Admitted*

In his Motion, Horsley does not set forth what evidence he complains of that relates to the dismissed Count Seven. Motion, ECF 373 at 8. As alleged in the Superseding Indictment, Count Seven related to a controlled purchase that occurred on July 25, 2018. Undersigned counsel reviewed Government's Exhibit 151, which was a summary chart of the controlled purchases in the case. July 25 was not mentioned in the chart. Undersigned counsel also reviewed the Joint Appendix from the appeal to the Fourth Circuit and could not locate a reference to July 25. This claim should be dismissed because the error alleged does not seem to have occurred. It is otherwise "vague and conclusory." *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013).

### *B. Even if Evidence of This Were Admitted, It Would be Admissible*

Even if some evidence, such as a mention of the July 25 purchase, had been admitted, it would otherwise properly be admissible. "To prove conspiracy to possess cocaine with intent to distribute, the Government must establish: (1) an agreement to possess cocaine with intent to

distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy." *United States v. Wilson,* 135 F.3d 291, 306 (4th Cir.), cert. denied, 523 U.S. 1143 (1998). "Evidence is relevant if [] it has any tendency to make a fact more or less probable than it would be without the evidence; and [] the fact is of consequence in determining the action." Fed. R. Evid. 401.

Here, admitting evidence of Horsley's involvement in distributing cocaine through a controlled purchase on July 25, 2018, whether or not there was a corresponding count, would be admissible to show his involvement in the conspiracy to distribute controlled substances. Accordingly, Horsley's claim should be dismissed.

## V. Horsley Fails to Show That Appellate Counsel Was Ineffective for Raising Claim Related to Search of Apartment

Horsley claims that his appellate counsel was ineffective for failing to raise a claim related to the search of his apartment. "The process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986). "[I]t is still possible to bring a Strickland claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Here, Horsley does not specify what issue he would have appealed with respect to the search of the apartment. He does assert how the issue was wrongly decided and how raising it in appeal would have resulted in a different outcome. Accordingly, the Court cannot find that the appellate counsel's competence was lacking and should dismiss Horsley's claim.

## VI. Horsley Fails to Show Counsel Was Ineffective for Not Objecting to Certain Evidence

Horsley claims that his lawyer was ineffective for failing to objection to various types of evidence. Motion, ECF No. 373 at 13. Horsley does not assert what objections should have been made or the basis for such objections.

To prove ineffective assistance of counsel, Horsley must show, considering all the circumstances, that counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-91 (1984). Horsley must also show, prove prejudice, by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Here, nothing in Horsley's Motion raises any question about the competence of counsel at trial. In fact, throughout the trial, trial counsel objected to the Government's evidence. Some of those objections were sustained and others were overruled. In any event, Horsley cannot show how a failure to object would have altered the result of the case. These claims are also "vague and conclusory." *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013). For these reasons, his claim should be dismissed.

## VII. Horsley Fails to Show Counsel Was Ineffective for Failing to Object to Purported Rule 404(b) Evidence or Calling Roberta Haskins

Horsley claims that his attorney was ineffective for failing to object to what he purports is Rule 404(b) evidence from Travis Smiley, and for failing to call Roberta Haskins as a witness. Motion, ECF No. 373 at 13. Horsley also had April Callahan submit an affidavit about purported statements she heard from Haskins. ECF No. 386.

Federal Rule of Evidence 404(b)(1) states that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion

the person acted in accordance with the character." However, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "Evidence of uncharged conduct is not other crimes evidence subject to Rule 404 if the uncharged conduct arose out of the same series of transactions as the charged offense, or if evidence of the uncharged conduct is necessary to complete the story of the crime on trial." *United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009) (quotations and citations omitted).

To prove ineffective assistance of counsel, Horsley must show, considering all the circumstances, that counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-91 (1984). Horsley must also show, prove prejudice, by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

With respect to the testimony of Travis Smiley, Horsley does not point to what evidence he considers would be improper Rule 404(b) evidence. Smiley testified to purchasing narcotics from Horsley on multiple occasions. This was directly in support of the conspiracy charge against Horsley. Counsel did not have a basis to object to this testimony and so was not ineffective for failing to object. Further, Horsley does not show how the objection would alter the result of his case. Since the evidence went directly to a charged count, it was admissible and an objection would have been overruled.

With respect to Roberta Haskins, Horsley likewise cannot show deficiency by counsel for failing to call her. As was disclosed to Horsley through discovery, Haskins testified before the grand jury, under oath, that she drover co-defendant Kenneth Adgerson around Lynchburg, Virginia so he could sell narcotics. On several occasions, this included driving Adgerson to pick

up narcotics at Horsley's mother's house, his sister's house, and other locations. Before the grand jury, Haskins stated "I did not know his name, but we called him Cat Man or Q," referring to *Quentin* Horsley.

Horsley cannot show how calling Haskins as a witness in his case would have helped him. If anything, Haskins provided addition evidence against him. The Government chose not to call her as a witness because it was duplicative of evidence already admitted by Adgerson and others. Further, it should be noted that Horsley also moved early on to exclude the testimony of Roberta Haskins. Motion, ECF No. 80. Somehow, he now claims that he would have called her to testify. Because he cannot show error or prejudice, Horsley's claim should be dismissed.

**VIII. Horsley Defaulted Due Process Claim and Otherwise Cannot Show Prejudice**

Horsley claims that the Government violated his Sixth Amendment rights in some way by "suppress[ing] photo line up evidence from Roberta Haskins not able to pick me out of a line up." Motion, ECF No. 373 at 13. As an initial matter, his claim is "vague and conclusory." *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013).

Horsley raises this legal issue for the first time in his Motion to Vacate. As a legal issue not raised on appeal, it is subject to the procedural default analysis set out in *United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1999), in that Horsley must show cause for raising this issue now and actual prejudice from the error.

*A. Horsley has not shown cause to raise this issue now*

The Supreme Court's decision in *United States v. Frady*, 456 U.S. 152, 168 (1982) makes clear that cause must be from some external impediment for why the claim could not have been brought before. Here, Horsley provides no justification nor specific description of the issue. The Court should dismiss this claim for lack of cause to bring this claim now.

*B. Horsley fails to prove actual prejudice*

Horsley also fails to prove actual prejudice. Horsley would need to show that the error must have resulted in an "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Here, it is unclear what error Horsley complains of. Haskins was not a witness at trial would made an in-court identification. There was no evidence to suppress. The Court should dismiss this claim for lack of actual prejudice.

*C. Horsley does not claim or prove actual innocence*

An exception to the doctrine of procedural default is where the defendant is actually innocent. Horsley does not make this claim. Accordingly, this should not prevent the Court from dismissing this claim.

## **CONCLUSION**

For the above reasons, Horsley has not stated a claim upon which relief can be granted. The Petition should be dismissed.

Respectfully submitted,

*s/Sean M. Welsh*

Sean M. Welsh
Assistant United States Attorney
Virginia Bar No. 89660
United States Attorney's Office
U. S. Courthouse and Federal
Building
255 West Main Street, Room 130
Charlottesville, Virginia 22902
Telephone: 434-293-4283
Fax: 434-293-4910

## CERTIFICATE OF SERVICE

I certify on this date, July 27, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and caused to be sent a copy via first class mail to:

Quentin L. Horsley
Reg No. 22608-084
FCI Gilmer
P.O. Box 6000
Glenville, West Virginia 26351

/s/ Sean M. Welsh