CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE, VA
FILED

JUL 2 / 2026

LAURA A. AUSTIN, CLERK
BY: M. Poff
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA

UNITED STATES OF AMERICA PLAINTIFF

-VS- NO. 6:19-CR-00013

QUENTIN LOWELL HORSLEY DEFENDANT

AFFIDAVIT

Comes the affiant - Quentin Lowell Horsley, and after being duly sworn, deposes as follows:

1. That the affiant is the defendant/petitioner, that is above-named.

2. This Affidavit is being submitted in support of the "Motion to Vacate" that was previously filed under 28 USC § 2255.

3. That in the month of October of 2021, affiant's girl friend - Brandi Callen, acting as his representative and agent, paid attorney Anthony Franklin Anderson, a retainer fee to represent the affiant in the scheduled jury trial. Thereafter, the affiant received no correspondence, or telephone conversations with attorney Anderson until three weeks prior to commencement of the jury trial that was set for March 22, 2022. (See Docket Entry # 191).

4. That, during the three weeks preceding commencement of the jury trial on March 22, 2022, attorney Anderson visited the affiant once a week at the Detention Center. During those visits, attorney Anderson would discuss items provided as "Discovery" material. Affiant provided attorney Anderson with the names of individuals who the affiant wanted as witnesses for the defense. These included Roberta Haskins; April Callahan; an inmate in the same Detention Center, whose nickname was "Boosie". At no time did attorney Anderson inform affiant of his intention to enter into a stipulation, or stipulations, with the prosecutor about not contesting the purity or weight of controlled substances seized from the residence of Roberta Haskins by officers conducting a search thereof.

It came as a total surprise to the affiant when attorney Anderson made the following admissions to jurors during both "Opening Statements", and"Closing Arguments", to the jury:

> Our evidence and our case will not be to you that Mr. Horsley didn't have some involvement with the sale of cocaine. You're going to hear about that.
>
> You're going to be called upon to decide what role he played in his sales of cocaine. Arguing - you might conclude . . . that there were certain distributions made of cocaine . . . [but not of] a conspiracy to

distribute methamphetamine or heroin.

> We submit to you that with respect to the distribution of cocaine, that the cocaine was distributed from [the defendant] to Mr. Adgerson.

United States v. Horsley, No. 22-4671 (4th Cir.,06-24-2024) Slip opinion, at page 39.

The foregoing admissions by attorney Anderson were not agreed to by the affiant. Affiant was not advised by attorney Anderson, prior to trial, that he planned to make those admissions, or to, essentially, admit affiant's guilt to some of the charges. Those admissions eliminated the purpose of the jury trial, especially since the Government presented the affiant with a plea offer of twenty-years prior to the jury trial. The above-recited admissions constituted a breach of the retainer agreement entered into between the affiant and attorney Anderson where the latter agreed to defend the affiant at his jury trial, and not enter a guilty plea. Thus, this affiant never agreed to attorney Anderson admitting guilt to any of the allegations contained in the indictment against the affiant. Following return of the guilty verdicts, attorney Anderson admitted to the affiant that he "messed up". After the Trial Attorney Anderson Visited the Affiant at The Jail. And Again Admitted To The Affiant that he had messed up in Trial, And would Refund some of Affiants money.

5. Defense counsel Anderson's failure to investigate the facts, and to consult with this affiant about the facts surrounding the seizure of controlled substances, and monies, from the residence of Roberta Haskins, was fatal to affiant's defense. The speculative trial testimony of the officers who testified as witnesses for the Government could easily have been impeached through demonstrating that they possessed no proof supporting their uncorroborated conclusion that those controlled substances, and monies, were possessed by this affiant. The GPS device which officers placed on affiant's motor vehicle, without prior judicial authorization, was available to attorney Anderson to impeach the officers' testimony through establishing that the GPS never revealed the affiant being present, or near, the residence of Roberta Haskins. She resided in a totally different section of the city than did the affiant, and his presence in that area of town was not recorded by the GPS device. The GPS device was affixed to affiant's motor vehicle for over six months, yet, officers never found that the affiant visited Roberta Haskins residence. Defense counsel's inadequate preparation or investigation robbed the affiant of the opportunity to show that the trial testimony of codefendant - Kenny Adgerson, was totally false.

6. Trial counsel failed to register any objection to the conduct of the government prosecutor in representing to jurors that a cellphone provided direct evidence that certain text messages recorded on the cellphone of alleged co-conspirator Kenny Adgerson, were sent to him from the affiant's cellphone, which text message contained the proof required to connect this affiant to Kenny Adgerson's drug activities with Roberta Haskins. The prosecutor's aforesaid conduct constituted a misrepresentation of the facts in that the text message did not have, as its source, the affiant's subject cellphone. The video monitor upon which the prosecutor placed the subject text message (contained on Kenny Adgerson's cellphone) for the jury's viewing, failed to include a number from which the text message originated, as it was left blank. In order to compensate for that lack of any nexus to a cellphone possessed by this affiant, the prosecutor, while speaking to jurors during Closing Arguments. physically waived a cellphone with an intent to mislead jurors into believing that the subject text message was sent to Kenny Adgerson from the affiant via the cellphone he was waiving to jurors. That was totally false, and defense counsel did not object or move for a mistrial.

Although officers and agents seized cellphones from this affiant, none of those cellphones were found to be the source of the subject incriminating text message to Kenny Adgerson's cellphone, as misrepresented by the prosecutor to jurors. Furthermore, the Fourth Circuit Court of Appeals relied on the prosecutor's aforesaid misrepresentation to conclude that no constitutional error occurred from the warrantless seizure of cellphones from affiant's wife that occurred in an out-of-state hotel suite, because Kenny Adgerson's cellphone showed the source of the subject text message was from one of those cellphones seized in the hotel suite at the time of affiant's arrest.

7. Defense counsel provided ineffective assistance of counsel through his unprepared cross-examination of Kenny Adgerson, as pertaining to the controlled substances seized from the residence of Roberta Haskins, Adgerson's girlfriend. Based on Kenny Adgerson's testimony, the affiant trusted him with merchandise totalling hundreds of thousands of dollars without any assurance that the storage site was safe, or that the affiant would receive his share of the profits. The affiant and Kenny Adgerson, including Roberta Haskins, were not lifelong friends, or relatives. They were strangers for

all practical purposes, yet, Kenny Adgerson presented a story streching gullibility beyond its breaking point. He wanted jurors to believe that a person named Quentin Horsley, whom he had just recently met, trusted him to secure the safe storage of hundreds of thousands of dollars of controlled substances, when both of them were lawbreakers and looking to acquire wealth unlawfully.

In the proffer which Roberta Haskins gave to agents, it was her statement that Kenny Adgerson had several sources from whom he purchased controlled substances. United States v. Roberta Haskins, 2019 U.S.Dist.LEXIS 87853 (W.D.Va.), at *3. Assuming that defense counsel had subpoenaed Roberta Haskins as a witness for the defense, then she would have impeached Kenny Adgerson's trial testimony and destroyed his credibility as a government witness. Inexplicably, the defense attorney did not subpoena Roberta Haskins. The sole inference to be drawn from the government's omitting to present Roberta Haskins as a witness is that her testimony would have been unfavorable to its theory of culpability and the relationship, if any, between the petitioner and Kenny Adgerson, and between petitioner and Roberta Haskins. Furthermore, when agents interrogated Roberta Haskins, she

was not able to even give a generalized description of the petitioner/affiant, or to pick him from a photo pack. Revelation of this fact would have carried a great deal of weight with jurors, causing them to discount the existence of any relationship, or conspiracy, between the petitioner and Roberta Haskins, including a finding that petitioner did not store illegal drugs at her residence.

8. That, on February 7, 2019, affiant' mother - Brenda Horsley, and her boyfriend - Michael Hubbard, entered the apartment of Kaeisha Coles, at 1009 Misty Mountain Road, Apt. # 1212, Lynchburg, Virginia, and removed all of the furniture which was owned by petitioner - Quentin Horsley, because he had terminated his romantic relationship with Kaeisha coles, a few days prior thereto. In addition, all of petitioner's clothing, shoes, cellphones, stereo equipments, televisions, DVD players, Play Station 4 game system, sun glasses, photos, etc. were removed, as well. The foregoing were then taken to a storage unit at: Triple A Storage, on Timberlake Road, in Lynchburg, Virginia, and placed in a unit that was leased by Rebecca Meadows, an acquaintance of this affiant.

Officers then cbtained search warrants for both of

the above-recited sites or locations. During the ensuing jury trial, state officers (Detective Booth and Detective BAILEY) testified that the cellphones seized from the storage site were, instead, seized from the apartment of Kaeisha Coles, at 1009 Misty Mountain Road, Apt. #1212, in Lynchburg, Virginia. The attached affidavit of Brenda Horsley, establishes that the foregoing trial testimonies of Detectives Booth and Bailey, were false; and that the conduct of the prosecutor in misleading jurors that the cellphone he was waiving in an obvious attempt for jurors to infer that it was the cellphone used by petitioner * Horsley to send the text message to Kenny Adgerson. There was no phone number produced by the Government which supported the testimony of Kenny Adgerson that the subject text messages were sent from the petitioner on the cellphone that the Detectives and prosecutor represented had been seized from Kaeisha Coles apartment.

Trial counsel for the petitioner completely failed to impeach the trial testimony of Detective Booth, and Detective Bailey, including Kenny Adgerson, by producing the witnesses who would have testified as to the foregoing

* It was misconduct by the prosecutor to waive a cellphone to the jury that he knew was not shown to be the source of text messages sent to Kenny Adgerson's cellphone, while, simultaneously, arguing defendant had sent the text messages, but the source was unknown.

facts, and demonstrated the falsity of those witnesses for the Government. Defense counsel was fully informed by the Affiant about the foregoing falsity inherent in the Government's witnesses testimony, however, counsel undertook no steps to interview the witnesses who would have demonstrated the falsity of the trial testimonies of Detective Booth, Detective Bailey, and the prosecutor's false representation to jurors that the phone he was displaying to them was the one to which Kenny Adgerson had sent text messages.

9. Defense counsel failed to utilize the search warrant application filed by Detective Trent on 02/14/19, for the residence of Roberta Haskins, at 1639 Blackburn Street, Lynchburg, VA, in which exclusive reliance was placed on the information provided by a confidential source, that Kenny Adgerson was using that residence to store monies and illegal drugs, and that Kenny Adgerson was a frequent visitor to Roberta Haskins residence, and would remain there for extended periods of time since they enjoyed a romantic relationship. Omitted from the detective's foregoing Affidavit was any reference to this Affiant - Quentin Horsley, or that this Affiant had been observed visiting that residence in any capacity. How-

ever, defense counsel refused to capitalize on the omission of Quentin Horsley's identity from Detective Trent's foregoing application by cross-examination during the jury trial.

10. Defense counsel failed to cross-examine Detective Booth in regards to the GPS device that he had attached to this Affiant's motor vehicle, as set-forth in his Application for a Search Warrant that was filed 02/13/19, and used to establish probable cause for the search warrant. It is readily apparent from that Application that law enforcement officers had been tracking Affiant's movements via the GPS device, for several months, which permitted law enforcement to identify Affiant's residence at: 1009 Misty Mountain Rd., Lynchburg, VA. Significantly, while law enforcement officers tracked the daily movements of Affiant Quentin Horsley to numerous locations, at no time were the officers provided information from the GPS device that established Quentin Horsley's association with the situs of Kenny Adgerson's drug storage location at Roberta Haskins residence, 1639 Blackburn Street, Lynchburg, VA. Thus, while officers were able to discover the location of this Affiant's residence, to the contrary, that same GPS device

provided crucial exculpatory evidence absolving Quentin Horsley of any connection to the monies and illegal drugs seized from the search of Roberta Haskins residence. Kenny Adgerson and others gave false trial testimony that those illegal drugs and monies were possessed by Quentin Horsley, however, defense counsel failed to utilize the GPS device to demonstrated the patent falsity of Kenny Adgerson's trial testimony, and that of others. Eliminating those illegal drugs and monies from the equation would have resulted in a dramatic decrease in the sentence imposed on Quentin Horsley.

11. In Novenber of 2019 my girlfriend Brandi Collen and my sister Natasha Horsley paid attorney Robert Dean a retainer fee to represent me at trial. Once Mr. Dean had been retained, I then asked Mr. Dean to get the warrant and affidavit from the GPS devises that were used by Detective Booth. Mr. Dean came to see me four months after my request, to tell me that "he thought something was wrong" with the warrant from the devise, because the prosecutor keeps putting him off. Every time he would call the prosecutor asking for the warrant and affidavits to the GPS devises. Mr. dean left the visit that day but promised me he would get to the bottom of the delay for the GPS warrant and applications. Two months later Attormey Robert Dean contacted my girlfriend Brandi Callen and myself in May of 2020,

just before my Evidenciary hearing to challenge the search warrant to 1009 Misty Mountain Rd. Mr. dean informed my girlfriend and myself, that Detective Booth had messed up with the warrant to place a GPS tracking devise on my vehicle. Attorney Robert Dean also informed this Affiant, and my girlfriend Brandi Callen that the GPS warrant did not have an affidavit. And therefore the GPS devise was invalid. Robert Dean also stated to me, and Mrs. Callen, that he would file a Franks Motion for the inconsistencies with the GPS warrant. Mr. Dean also told me and Mrs. Callen that he would also file a Franks Motion as to Detective Booth's search warrant affidavit to search 1009 Misty Mountain Rd. In June 2020 my hearing was held but my attorney Robert Dean had failed to file the Franks Motion for Detective Booth's affidavit to the Misty Mountain Rd. apartment. My attorney Mr. Dean did not even subpoena Detective Booth to court, instead he allowed another officer who admitted that he didn't have anything to do with the investigation (See Evidentiary transcripts page 30-31). My attorney Mr. Dean only briefly brought up the GPS tracking while while questioning Officer [Daniel Bailey]. I asked my attorney several times to file the Franks Motion, and GPS motions on my behalf. But Mr. Dean would never file them. My hearing was put under advise-ment for nine months, and it was denied in March of 2021. A couple of weeks later attorney Robert Dean came to the jail to visit and at this time I asked Mr. dean when he was going to file the GPS Franks Motion and the FRanks motion

for for 1009 Misty Mountain Rd. As to the issues Mr. dean informed me and Brandi Callen about May of 2020. I stated to Mr. Dean, "Why are you not filing the motions for the GPS devise and the Franks motion for Misty Mountain Rd. application, when you know they've done illegal stuff, after I've been asking you for months now?" Mr. Dean replied by saying, "Well, you've done illegal stuff as well." And that is when I new Mr. Dean was not in my corner and that was the reason I fired Mr. Dean in April of 2021. I also have documents of emails that my attorney sent to me of Robert Dean emailing the AUSA Sean Wëlch. Mr. Dean asked, via email, the AUSA for the affidavits. Then Mr. Dean stated, "Even without the affidavits there are a number of issues with Detective Booth's execution of the search warrant, and subsequent service and filing which I will address to the court in a pleading. Please let me know about the above items. Thank you." Again, my attorney never made these pleadings to the court after ten months from the time Mr. Dean informed me and Brandi Callen that the GPS devise was illegal. Mr. Dean also told me and my girl friend that he had called AUSA Sean Wëlsh in May of 2020, and Mr. Welsh told Mr. Dean that he did not have the affidavit to the GPS tracking warrant.

12. Detective Booth mislead the judge in his application for a search warrant to search 1009 Misty Mountain Rd., Apt. 1212. Detective Booth stated that based on information obtained from GPS units on the GMC Yukon and BMW. Horsley

has been to 1000 Misty MOuntain Rd. before and after controlled drug purchases were made using CRIs. These statements from Detective Booth were false, and the GPS data will show that I never left 1009 Misty Mountain Rd. driving a GMC Yükon or BMW to conduct a controlled sell to a "CRI" on none of the dates alledged in Detective Booth's application, then after conducting the alledged controlled buys and then driving back to 1009 Misty Mountain Rd., Apt. 1212. But even before Detective Booth placed GPS tracking devises on my vehicles, Deyective Booth statedin the search warrant application that he had placed a Pen Register on my phone number 434-849-4256 with real time location data. I did not see a warrant in my Discovery for the Pen Register and the Real Time location data. Detective booth used this method to locate 1009 Misty Mountain Rd. in late June and early Jüly, 2018. After doing my own investigation I believe Detective Booth located 1009 Misty MOuntain Rd. using my real time location data. Detective Booth then drove through the apartment complex at 1009 Misty Mountain Rd., spotted the target vehicle, GMC Yukon, Detective Booth claimed in his warrant application Horsley was known to drive since Jüly 2018, which was misleading to the judge whom allegedly on December 29, 2017 (7 months prior) Horsley had allegedly drove this same GMC Yukon to a controlled drug deal. Now, after Detective Booth located the GMC Yukon, and the apartment at 1009 Misty Mountain Rd., and after I done my own investigation, I believe this is when Detective Booth applied for the GPS tracking devise warrant on July 19,

2018 at 9:09 P.M. and placed the tracker on my vehicle at 12:30 A.M. July 20, 2018, then started his 7 month surveillance of all the places I ever went. In Detective Booth's search warrant application not once CRI stated that Horsley lived at 1009 Misty MOuntain RD. Apt 1212. CRI #2 stated vaguely that Horsley lives in the Timberlake Rd. area. Detective Booth turns to the GPS data again in his warrant application and states, ("While tracking the above two vehicles Horsley has made multiple trips to 1009 Misty Mountain Rd. Horsley has been observed making multiple trips to 1009 Misty Mountain RD in one day. This address is often the last address Horsley goes to each day which leads this affiant to believe this is the address where Horsley stays on most occasions." The 7 month surveillance through GPS tracking is Detective Booth's entire investigation. Detective Booth again misleads the judge in his application for a search warrant when he states, "This affiant has observed Horsley at 1009 Misty Mountain Rd. in the city of Lynchburg, VA. On multiple occasions while doing surveillance. Based on information this affian has received from confidential reliable information (CRI) and my own investigation, Quentin Horsley and Kaeisha Coles live at the residence, in apartment 1212." Detective Booth clearly states in his warrant application that CRI #2 gave a tip that Horsley lives in the TImberlake Rd area. But now Detective Booth is saying that based on information from confidential reliable informants (plural), Quintin Horsley and Kaeisha Coles live at the residence in Apt. 1212.

Now Detective Booth is thereby imputing the credibility of CRI #2 to CRI #1 and CRI #3 when neither CRI #1 or CRI #3 stated that I lived at 1009 Misty MOuntain Rd. apt. 1212. Again CRI #2 gave a very vague statement of the area he thought I lived in, which was after Detective Booth sought for a Pen register with real time data location on my phone, then attached a GPS tracking device on my GMC Yukon on July 19,2018, after all of Detective Booth's information was received from GPS location data. In late July 2018 is when Detective Booth was in contact with CRI #2. (See warrant application). Detective Booth states in his application "CRI #2 was interviewed and gave the following information on Horsley. CRI #2 stated Horsley lives in the Timberlake Rd. area. CRI #2 stated Horsley sells large quantities of cocaine and would meet people in random places to sell the cocaine. CRI #2 provided this affiant with the following phone number for Horsley in July 2018." So , clearly, Detective Booth is telling us that he is actually the only person that knows Horsley stays or is staying at 1009 Misty MOuntain Rd. apt. 1212, via GPS.

Detective Booth states the CRI's credibility on page 6 of the warrant application for 1009 Misty Mountain Rd. As for CRI #2's credibility, Detective Booth states, "I have received information from another CRI that they could purchase cocaine from CRI #2. A controlled drug purchase was set up on CRI #2 but did not occur."

But a year after Detective Booth filed and submitted his search warrant application to search 1009 Misty Mountain Rd.

apt. 1212, CRI #2 did indeed sell to a confidential informant sometime in February of 2020. About four months before my supression hearing was scheduled in June 2020, challenging Detective Booth's warrant application, and also thinking my attorney Robert Dean had filed to the court asking to challenge Detective Booth's truths in his application for a Franks hearing. Detective Booth or the Prosecutor did not inform me or my attorney about the conduct of Detective Booth's informant, CRI #2. This information could have been used at my suppression hearing to destroy CRI #2's credibility in the search warrant application. I did not know about this CRI #2 until a week before my trial in March 2022, when the Prosecutor dismissed count seven of the indictment (a distribution count). After my trial I did my own investigation into this matter, and found out that CRI #2 had indeed sold to a confidential informant and was caught with methamphetamine months later when CRI #2 was arrested (William Goode). I also found out through my own investigation that CRI #1 and CRI #2 had never been used before as confidential informants.

13. Detective Booth omitted statements anf facts with reckless disregard for the truth in his warrant application. Detective Booth omitted a crucial fact of having surveillance on 1009 Misty Mountain Rd. on the day of February 7, 2019. Detective Booth witnessed my mother and her boyfriend removing my furniture and other belongings from 1009 Misty MOuntain Rd., into a storage unit on Timberlake Rd. After witnessing this

Detective Booth sought a search warrant the same day. Booth omitted facts that on February 1, 2019 the 911 call came from my uncle James Rucker because Kaeisha Coles wouldn't allow him to remove my furniture from the apartment on February 1, 2019. Detective Booth went and sought a warrant to search 1009 Misty Mountain Rd. on February 7, 2019, after witnessing during surveillance, everything being removed and placed in a storage unit. Detectice Booth knew or should have known that by the time the search warrant was executed on February 11, 2019 I no longer lived at this residence. Detective Booth gave misleading information to the issuing judge in his warrant application when Detective Booth stated, "From my training experience, this affiant knows these items can often be found within a residence, outbuilding, vehicle, and on a subject's person." By Detective Booth having knowledge of the apartment being moved out of, then the judge issuing the warrant was mislead by information in the affidavit that the affiant knew was false or reckless disregard of the truth.

Sincerly,
Quentin Horsley
[signature]

Quentin Horsley #22608-084
FCI Beaumont Medium
P.O. Box 26040
Beaumont, Tx 77720




FEDERAL District Court
Court OF Clerk
210 Franklin Rd. SW,
Roanoke, V.A. 24011

ECEIV
JUL 27 2026
JSDC Clerk's Off
Mail Room